**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

IN RE

| | |
|---|---|
| **DANNY ROBERT LAINHART** | **CASE NO. 16-51029** |
| | **CHAPTER 7** |
| **DEBTOR** | |
| **STEPHEN PALMER, Chapter 7 Trustee** | **PLAINTIFF** |
| **V.** | **ADV. NO. 16-5039** |
| **PAUL MILLER FORD, INC., et al.** | **DEFENDANTS** |

**MEMORANDUM OPINION**

Stephen Palmer, the Chapter 7 Trustee, filed this adversary proceeding to compel the Defendant Paul Miller Ford, Inc. ("Paul Miller") to provide a certificate of title to a 2012 Ford F-150 pickup truck purchased by the Debtor prepetition.  The Trustee and Paul Miller filed cross-motions for summary judgment [Trustee:  ECF Nos. 32, 37, 38, 39, and 40; Paul Miller: ECF Nos. 31, 35, 36, 41, and 52], a hearing was held, and the matter is submitted for decision [ECF Nos. 48 and 49].  The Trustee is entitled to judgment as a matter of law.

**I.     FACTUAL BACKGROUND.**

Paul Miller obtained the truck, which was titled under Ohio law, as a trade-in on an earlier sale.  [*See* ECF No. 35-1 at 9.]  The Debtor agreed to purchase the truck on February 1, 2016, with financing from the University of Kentucky Federal Credit Union (the "Credit Union").  [*See id.* at 4-5, 39-40; ECF No. 35-2 at 1-4.]  The Debtor signed multiple documents on February 1, including papers that allowed Paul Miller to subsequently transfer the title on his behalf.  [ECF No. 35-1 at 11, 13, and 14.]  The Debtor also presented his driver's license and proof of insurance and drove away with the truck.  [*Id.* at 47.]

Paul Miller requested a duplicate title for the truck in April from the Hamilton County,

Ohio Clerk of Courts, alleging on the papers that the original title was lost.  [*See* ECF No. 35-2 at 11-16.]  A duplicate title was issued on April 26, 2016.  [ECF No. 35-1 at 8.]  A Kentucky motor vehicle dealer is not required to obtain a certificate of title every time it acquires a car for resale.  KY. REV. STAT. 186A.220(1).  Therefore, the duplicate title remained in the name of the prior owner, with Paul Miller's interest derived from an Assignment of Ownership.  [*See* ECF No. 35-1 at 8-10.]

Kentucky law requires an inspection as a prerequisite to transfer of the title to an out-of-state vehicle.  *See* KY. REV. STAT. § 186A.115.  Paul Miller presented testimony from three employees that it told the Debtor about the need for the inspection multiple times.  [*See* ECF No. 31-4 at 2; ECF No. 31-5 at 2; and ECF No. 39-3 at 11-15.]  The first time was shortly after the February 1 sale.  [*See* ECF No. 31-4 at 2; ECF No. 31-5 at 2; ECF No. 39-3 at 11-12.]  The final contact came during telephone calls to the Debtor some time after the new title was received. [ECF No. 31-4 at 2; ECF No. 31-5 at 2.]

The Debtor only admits he received a call regarding the inspection after he filed his initial chapter 13 bankruptcy petition on May 23, 2016.  [ECF No. 39-1 at 24-25.]  The Debtor testified he told the caller his lawyer said he was not obligated to obtain the inspection or talk to Paul Miller. [*Id.* at 21, 23-26.]  The Debtor also testified that, although he remembered returning to Paul Miller at least twice to renew the vehicle's temporary tags, he was never told about the need for an inspection until the post-petition phone call.  [*Id.* at 21, 24.]

The Debtor voluntarily converted his case to one under chapter 7 on June 17, 2016, and surrendered the truck to the Trustee sometime thereafter.  The Trustee filed this adversary proceeding on September 9, 2016, when Paul Miller refused to transfer title to the truck.  [ECF No. 1.]  The Trustee's Complaint also named the Credit Union as a defendant, but the Credit

2

Union and Paul Miller do not assert a security interest was ever perfected.  Therefore, Paul Miller took an assignment of any rights of the Credit Union based on their Dealer Agreement [ECF No. 36 at 5] and the Trustee agreed to dismiss the Credit Union [ECF No. 46].  Paul Miller filed its Answer [ECF No. 13], and the matter is now submitted on the cross-motions for summary judgment.

**II.    JURISDICTION.**

This is a core proceeding under 28 U.S.C. § 157(b)(2).  The Court has jurisdiction of core proceedings pursuant to 28 U.S.C. §§ 157(a) and 1334, and Joint Local Rule 83.12 of the United States District Courts for the Eastern and Western Districts of Kentucky.  Venue is proper pursuant to 28 U.S.C. § 1409.

**III.   ANALYSIS.**

  **A. The Summary Judgment Standard.**

Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law."  *See* Fed. R. Bankr. P. 7056 (incorporating by reference Fed. R. Civ. P. 56).  The movant bears the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011).  The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).  A genuine issue for trial exists when there is sufficient "evidence on which the [factfinder] could reasonably find for the plaintiff."  *Id.* at 252.

"[T]he standards upon which the court evaluates the motions for summary judgment do not change simply because the parties present cross-motions." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). In such circumstances, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (quoting *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed. Cir. 1987) (citations omitted)). Still, "'the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.'" *Poss v. Morris (In re Morris)*, 260 F.3d 654, 665 (6th Cir. 2001) (quoting bankruptcy court decision below with approval).

**B. The 2012 Ford F-150 Pickup Truck is Property of the Debtor's Bankruptcy Estate.**

The transaction in this case is a typical dealer-to-buyer transfer. The Debtor looked at vehicles at the Paul Miller car lot. He made his selection, negotiated a price, presented his driver's license and proof of insurance, and drove off with the truck. The Debtor in this circumstance became the owner of the truck pursuant to Kentucky's comprehensive automated motor vehicle registration and titling system. *See* KY. REV. STAT. §§ 186A.010 – 186A.990. The dispute here arises because of a unique interpretation of the law by Paul Miller that is ultimately unsupported by the statutes, case law, and the facts.

    **1. The Debtor was the Owner of the Vehicle on the Petition Date Based on the Plain Language of Kentucky's Registration and Titling System.**

Section 541 of the Bankruptcy Code provides that a debtor's bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case . . . wherever located and by whomever held[.]" 11 U.S.C. § 541(a)(1). Non-bankruptcy law, typically state law, defines a debtor's ownership interest as of the petition date. *See, e.g., Tidewater Fin. Co. v. Curry (In re Curry)*, 347

4

B.R. 596, 600 (B.A.P. 6th Cir. 2006), *aff'd,* 509 F.3d 735 (6th Cir. 2007) (citing *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)).   Kentucky law provides that the Debtor was the rightful owner of the truck on the petition date.

Section 186.010(7) of the Kentucky Revised Statutes confirms the Debtor was the owner when he signed the purchase and financing papers, received possession of the truck, and drove off the lot:

> (7) (a) "Owner" means a person who holds the legal title of a vehicle or **a person who pursuant to a bona fide sale has received physical possession of the vehicle** subject to any applicable security interest.
>
>  . . .
>
> (c) A licensed motor vehicle dealer who transfers physical possession of a motor vehicle to a purchaser pursuant to a bona fide sale, and complies with the requirements of KRS 186A.220, shall not be deemed the owner of that motor vehicle solely due to an assignment to his dealership or a certificate of title in the dealership's name. Rather, under these circumstances, **ownership shall transfer upon delivery of the vehicle to the purchaser**, subject to any applicable security interest.

KY. REV. STAT. § 186.010 (emphasis supplied); *see also* KY. REV. STAT. § 186A.345 (the definitions in KRS § 186.010 apply to Chapter 186A).

This definition makes clear that a buyer who receives physical possession of a motor vehicle from a licensed motor-vehicle dealer pursuant to a bona fide sale is the owner of that vehicle under Kentucky law.   Despite this clear direction, Paul Miller argues it remains the owner of the truck and has the right to withhold the certificate of title.

> **2. The Sale is Not Void Based on the Debtor's Prepetition Failure to Provide the Vehicle for the Inspection Required by KRS § 186A.115.**

Paul Miller does not dispute the normal course of the transaction, but argues the sale is void because no vehicle inspection occurred.   Paul Miller blames the lack of inspection on the Debtor

5

because he failed to bring the truck in despite repeated requests.   This argument is not supported by Kentucky's registration and titling scheme or any other applicable law.

### a. Kentucky Law Does Not Void a Sale for Lack of an Inspection.

The truck has an out-of-state title, so an inspection is required before a Kentucky certificate of title can issue.   *See* KY. REV. STAT. § 186A.115(1).   Section 186A.115(1) provides in relevant part:

> [T]he owner of every vehicle brought into this state and required to be titled in this state shall, before submitting his application for title to the county clerk, have the vehicle together with his application for title and its supporting documents inspected by a certified inspector in the county in which the application for title is to be submitted to the county clerk.

The parties agree there was no inspection, but Paul Miller has not provided any statutory authority that voids the sale based on this omission and none was located.   Paul Miller argues instead that, at some point, the Debtor's failure to bring the car in for inspection voided the sale based on case law.

### b. The *Cunningham* decision does not control this case.

Without statutory authority providing the sale was void, Paul Miller relies on an older bankruptcy court case to support its claim.   *See SCT Motor Cars, Inc. v. Automotive Finance Corp. (In re Cunningham Used Cars, Inc.)*, 182 B.R. 22 (Bankr. E.D. Ky. 1995).   Paul Miller's interpretation of the *Cunningham* case is overly broad and the facts in that case are clearly distinguishable from those presented here.

The court in *Cunningham* allowed a sale by a secured creditor over the objection of an alleged purchaser because "[s]tatutory duties concerning transfer of title were not performed, and therefore there was no sale completed to the debtor and to the plaintiff."   *Id.* at 25.   *Cunningham* addressed a complicated dispute regarding ownership of a vehicle among multiple business entities involved in the used-car business, which is not comparable to the straightforward

6

dealer-buyer transaction in this case. *See id.* ("The automobile in question followed a tortuous route from one dealer to another, and the facts concerning some of the transfers are murky at best."). *Cunningham* did not deal with the specific statutes applicable here, so it does not support Paul Miller's interpretation.

Further, the prevailing party in *Cunningham* was not even a dealer; it was a secured creditor that retained the certificate of title despite subsequent undocumented dealer-to-dealer transfers. *Id.* Paul Miller did not assert a counterclaim alleging the Debtor acted in contravention of the financing agreement, wrongfully maintained possession of the vehicle, or frustrated the perfection of any lien rights. Even if it had, the Debtor's failure to comply with the financing documents would act as a breach of the contract, not a trigger for voiding the sale transaction.

*Cunningham*'s analysis of the law and its underlying facts are not applicable to this dispute.

### c. The Facts Do Not Support a Conclusion the Sale became Void Prepetiton.

Even accepting Paul Miller's theory that a sale could become void, it still cannot prevail. In its Motion for Summary Judgment, Paul Miller relies on the following statement of fact:

> After his failure to produce the Vehicle at the scheduled inspection PMF again contacted Lainhart, at which time Lainhart informed PMF that he had filed for bankruptcy and his lawyer told him that he did not have to obtain an inspection of the Vehicle and that he did not have to deal with PMF anymore. (Lainhart depo. p. 26).

[ECF No. 31 at 4.] This statement indicates Paul Miller was still attempting to arrange the inspection and transfer title at the time the Debtor filed bankruptcy.

The timing makes sense because Paul Miller did not even have the certificate of title in the name of the former owner until April 26, almost three months after the sale, and less than one month before the bankruptcy filing. *See* KY. REV. STAT. § 186A.115(1); *see also supra* Section III.B.2.a. Paul Miller's own testimony also confirms the timeline. Hailey Sawyers, title

7

clerk at Paul Miller, testified she asked the Debtor to appear at an inspection after the duplicate title was received, but he failed to show up on the specified date. [ECF No. 31-5 ¶¶ 6-7.] She contacted him again and he told her his lawyer said he was not required to cooperate. [*Id.* ¶¶ 8-9.] Sawyers's testimony was confirmed by Scott Zeltt, the finance and insurance manager for Paul Miller. [ECF No. 31-4 ¶¶ 7-10.]

This testimony shows Paul Miller was still working on scheduling the inspection up to and after the petition date. Once the petition was filed on May 23, the automatic stay applied to "prevent any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Voiding the sale is certainly an action that would affect possession and control of the truck, so it would violate the automatic stay.

Nothing in the record verifies Paul Miller ever stopped attempting to obtain an inspection before the petition date. Instead, the record shows Paul Miller only ceased its attempts to transfer the title to the Debtor's name after the petition date, when the automatic stay applied.

### 3. The Supplemental Information Provided by Paul Miller Is Not Persuasive.

After oral argument, Paul Miller's counsel filed a supplemental document that suggests additional Kentucky statutes might help the argument. [*See* ECF Nos. 52, 52-1 at 8.] The statutes address deadlines for certain actions in the Kentucky titling scheme. KY. REV. STAT. §§ 186A.070 – 186A.220. The supplement specifically suggests the 15-day deadline in KRS § 186A.095 controls the analysis. [*See* ECF Nos. 52, 52-1 at 8.]

Section 186A.095 provides:

> An owner of a vehicle for which a certificate of registration or title, and license plate must be obtained shall be allowed a fifteen (15) day grace period from the date on which he purchased a vehicle or brings a vehicle into the Commonwealth from another state, during which time the owner shall apply for and obtain motor vehicle

8

> insurance pursuant to KRS 304.39.080, a certificate of registration or title, and a license plate in his name.

KY. REV. STAT. § 186A.095. The deadline in KRS § 186A.095 does not apply, however, when a licensed motor-vehicle dealer such as Paul Miller elects to transfer title on a buyer's behalf. *See* KY. REV. STAT. § 186A.220(5)(c) (excluding dealers that have not received certificate of title from a prior owner from the deadline imposed by KRS § 186A.095).

Kentucky's registration and titling system also contemplates delays exceeding fifteen days when dealers elect to transfer title. Temporary tags issued pending transfer of title last 30 days and are renewable. KY. REV. STAT. § 186A.100. The Debtor was forced to renew the temporary tags at least twice because Paul Miller did not obtain the duplicate title until April 26.

Further, Paul Miller's actions confirm it did not believe any deadline applied. Paul Miller was still trying to transfer title into May, more than 15 days after any conceivable starting point (*e.g.*, the sale date, the duplicate-title date). *See supra* Section III.B.2.c. Paul Miller also accepted an affirmative obligation to complete the title transfer process for the Debtor, which suggests it would have some responsibility for a deadline violation. *See* KY. REV. STAT. 186A.220(5)(b) (the dealer may handle the title transfer process with the buyer's consent); *see also* ECF Nos. 35-1 at 4, 35-2 at 2 (Paul Miller accepted $559 for a "Customer Services, License Transfer & Title Processing Fee); and ECF No. 35-1 at 11-13 (Paul Miller also obtained and completed documents that facilitated this duty).

The supplemental information confirms the conclusion that the Debtor was the owner of the truck on the petition date as a matter of law.

### C. Fees and Costs Are Not Assessed.

The Court is unwilling to use its discretionary contempt powers to assess legal fees and costs when the Trustee has not adequately framed the issue in his complaint or legal argument.

The Trustee asked for damages pursuant to "Section 362 of the Bankruptcy Code." [ECF No. 1 ¶ 59.] An individual injured by a willful violation of the automatic stay is entitled to damages under this section. 11 U.S.C. § 362(k)(1). But whether a trustee is an individual that may seek damages for violation of the automatic stay pursuant to § 362(k)(1) is not yet resolved in this circuit. *See In re Nicole Gas Production, Ltd.*, 502 B.R. 508, 509–10 (Bankr. S.D. Ohio 2013) (collecting cases).

The Trustee could get to the same place by requesting damages for violation of the automatic stay pursuant to the bankruptcy court's contempt power under § 105(a) of the Bankruptcy Code. *See id.* But the Trustee did not make this request in his Complaint, nor did he provide any legal argument that would explain which statute–§ 105(a) or § 362(k)(1)–applies. Therefore, no fees or costs are awarded. *See Adell v. John Richards Homes Bldg. Co. (In re John Richards Homes Bldg. Co.)*, 552 F. App'x 401, 412 (6th Cir. 2013) (damages based on contempt powers is discretionary, particularly when the sanctions are limited to compensatory awards of attorney's fees).

## IV.  CONCLUSION.

For the foregoing reasons, the motion for summary judgment filed by the Plaintiff is GRANTED. [ECF No. 32.] The cross-motion for summary judgment filed by Defendant Paul Miller Ford, Inc. is DENIED. [ECF No. 31] A separate order will follow.

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Gregory R. Schaaf*
**Bankruptcy Judge**
Dated: Thursday, February 02, 2017
(grs)